IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| APOLLO STRONG, AMBER HART, ASHLEY STUART, and CHARLES STUART, | § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | CIVIL ACTION NO. 1:18-cv-634 |
| MARATHON RESOURCE MANAGEMENT GROUP, LLC d/b/a MARATHON RMG, LLC, JAMES STEWART, TRIPP BRIGHTWELL, CHARLES FELDMAN INVESTMENT GROUP, LLC d/b/a AUSTIN DESIGN & BUILD SOLUTIONS, and DANIEL WADE SHEBESTA a/k/a DANIEL WADE, | § § § § § § § § | |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT

Plaintiffs were hired by Defendants to clean and otherwise prepare student apartments for new tenants (known as "turn services" and "make readies") in Texas and Florida in the summer of 2017. Defendants promised each of the Plaintiffs $200.00 per day for their work and to pay for their lodging and other expenses. Plaintiffs worked approximately ten and a half days, and Defendants paid them nothing for their work. While Defendants paid for a few nights that the Plaintiffs had to stay in hotels, they did not pay for all of the lodging and did not reimburse Plaintiffs for most of the expenses they had incurred and that Defendants had promised to reimburse.

This is an action for breach of contract and for violations of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiffs seek all the wages they were promised,

reimbursement for their expenses, unpaid minimum and overtime wages, liquidated damages, and attorney's fees.

## JURISDICTION AND VENUE

1. Plaintiffs brings this case to recover unpaid compensation under 29 U.S.C. § 201, *et seq*. As such, this Court has jurisdiction over the Plaintiffs' FLSA claims pursuant to:

   a. 28 U.S.C. § 1331 (federal question);

   b. 28 U.S.C. § 1337 (interstate commerce); and

   c. 29 U.S.C. § 216(b) (FLSA).

2. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the federal claims that they form part of the same case or controversy.

3. Because the principle place of business of Defendant Charles Feldman Investment Group, LLC d/b/a Austin Design & Build Solutions is in Travis County, Texas and a substantial part of the acts or omissions giving rise to Plaintiffs' causes of action occurred in Travis and Hays Counties, Texas, venue is proper in this district and division under 28 U.S.C. § 1391(b)(1) and (2) and 29 U.S.C. § 216(b).

## THE PARTIES

4. Plaintiffs Apollo Strong and Charles Stuart are natural persons residing in Travis County, Texas. Plaintiffs Amber Hart and Ashley Stuart are natural persons residing in Williamson County, Texas.

5. Defendant Marathon Resource Management Group, LLC d/b/a Marathon RMG, LLC ("Marathon") is a Virginia corporation with its principal place of business at 10469 Atlee

Station Rd., Ashland, VA 23005. It does business in Texas and may be served through its registered agent C T Corporation System at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

6. During the relevant period of time, Defendant Marathon was an "enterprise" as defined in 29 U.S.C. § 203(r)(1) and was engaged in commerce, or the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(a).

7. During the relevant period of time, Defendant Marathon had annual gross volume sales made or business done in excess of $500,000.

8. During the relevant period of time, Defendant Marathon had two or more employees that handled goods (cleaning, painting, and maintenance supplies and machinery, for example) that moved in interstate commerce.

9. At all material times, Defendant Marathon acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs. Facts demonstrating that Defendant Marathon was Plaintiffs' employer include, but are not limited to, the following:

  a. Defendant Marathon or its agents possessed the authority to hire and fire Plaintiffs, and did, in fact, hire and fire Plaintiffs;

  b. Plaintiffs received instruction from Defendant Marathon or its agents;

  c. Plaintiffs were economically dependent on Defendant Marathon or its agents for the terms and conditions of Plaintiffs' employment; and

  d. Defendant Marathon or its agents possessed and exercised the authority to control the employment rules and policies applicable to Plaintiffs, including scheduling, timekeeping, payroll, and disciplinary practices.

10. Defendant James Stewart ("Stewart") is a natural person residing in Denton County, Texas. He is a Vice President of Defendant Marathon.

11. At all material times, Defendant Stewart acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs. Facts demonstrating that Defendant Stewart was Plaintiffs' employer include, but are not limited to, the following:

    a. Defendant Stewart or his agents possessed the authority to hire and fire Plaintiffs and did, in fact, hire and fire Plaintiffs;

    b. Plaintiffs received instruction from Defendant Stewart or his agents;

    c. Plaintiffs were economically dependent on Defendant Stewart or his agents for the terms and conditions of Plaintiffs' employment; and

    d. Defendant Stewart or his agents possessed and exercised the authority to control the employment rules and policies applicable to Plaintiffs, including scheduling, timekeeping, payroll, and disciplinary practices.

12. Defendant Tripp Brightwell ("Brightwell") is a natural person whose principal place of business is at 10469 Atlee Station Rd., Ashland, VA 23005. He is the President of Defendant Marathon.

13. At all material times, Defendant Brightwell acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs. Facts demonstrating that Defendant Brightwell was Plaintiffs' employer include, but are not limited to, the following:

    a. Defendant Brightwell or his agents possessed the authority to hire and fire Plaintiffs;

    b. Plaintiffs received instruction from Defendant Brightwell or his agents;

    c. Plaintiffs were economically dependent on Defendant Brightwell or his agents for the terms and conditions of Plaintiffs' employment; and

  d. Defendant Brightwell or his agents possessed and exercised the authority to control the employment rules and policies applicable to Plaintiffs, including scheduling, timekeeping, payroll, and disciplinary practices.

14. Defendant Charles Feldman Investment Group, LLC d/b/a Austin Design & Build Solutions ("Austin Design & Build Solutions") is a Texas corporation with its principal place of business at 6001 W. Parmer Ln., #370-411, Austin, TX 78727.

15. During the relevant period of time, Defendant Austin Design & Build Solutions was an "enterprise" as defined in 29 U.S.C. § 203(r)(1) and was engaged in commerce, or the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(a).

16. During the relevant period of time, Defendant Austin Design & Build Solutions had annual gross volume sales made or business done in excess of $500,000.

17. During the relevant period of time, Defendant Austin Design & Build Solutions had two or more employees that handled goods (cleaning, painting, construction, and maintenance supplies and machinery, for example) that moved in interstate commerce.

18. At all material times, Defendant Austin Design & Build Solutions acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs. Facts demonstrating that Defendant Austin Design & Build Solutions was Plaintiffs' employer include, but are not limited to, the following:

  a. Defendant Austin Design & Build Solutions or its agents possessed the authority to hire and fire Plaintiffs, and did, in fact, hire Plaintiffs;

  b. Plaintiffs received instruction from Defendant Austin Design & Build Solutions or its agents;

c.      Plaintiffs were economically dependent on Defendant Austin Design & Build Solutions or its agents for the terms and conditions of Plaintiffs' employment; and

d.      Defendant Austin Design & Build Solutions or its agents possessed and exercised the authority to control the employment rules and policies applicable to Plaintiffs, including scheduling, timekeeping, payroll, and disciplinary practices.

19.     Defendant Daniel Wade Shebesta a/k/a Daniel Wade ("Wade") is a natural person residing in Clark County, Nevada.  He is a managing member of Defendant Charles Feldman Investment Group, LLC d/b/a Austin Design & Build Solutions.

20.     At all material times, Defendant Wade acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs.  Facts demonstrating that Defendant Wade was Plaintiffs' employer include, but are not limited to, the following:

a.      Defendant Wade or his agents possessed the authority to hire and fire Plaintiffs, and did, in fact, hire Plaintiffs;

b.      Plaintiffs received instruction from Defendant Wade or his agents;

c.      Plaintiffs were economically dependent on Defendant Wade or his agents for the terms and conditions of Plaintiffs' employment; and

d.      Defendant Wade or his agents possessed and exercised the authority to control the employment rules and policies applicable to Plaintiffs, including scheduling, timekeeping, payroll, and disciplinary practices.

21.     Defendants were each an "employer" of Plaintiffs within the meaning of 29 U.S.C. § 203(d).

22.     Defendants "employed" Plaintiff s within the meaning of 29 U.S.C. § 203(g).

23. Each Plaintiff was an "employee" of each Defendant within the meaning of 29 U.S.C. § 203(e)(1).

24. At all times relevant to this action, Defendants willfully failed to pay the required minimum and overtime wages due to Plaintiffs.

## ADDITIONAL FACTS

25. In early 2017, Defendant Wade contacted Plaintiff Apollo Strong and offered him employment with Defendant Marathon cleaning and preparing student apartments for new tenants beginning in July 2017.

26. Defendant Wade asked Apollo Strong to find other workers that Strong could work with on the job.

27. Defendant Wade told Apollo Strong that he and the other workers would each be paid $200.00 per day for their work.

28. Apollo Strong, in consultation with Defendant Wade got a group of ten other friends, former co-workers, and people those friends and former co-workers knew, including Plaintiffs Amber Hart, Ashley Stuart, and Charles Stuart to join him in working as a team for Defendants.

29. Plaintiff Strong and other workers met with Defendants Wade, Stewart, and Brightwell on or about July 24, 2017 at an IHOP restaurant to discuss the job.

30. At this meeting, Defendant Stewart told Plaintiff Strong that each worker, including each Plaintiff, would make $200.00 per day with all expenses paid (including gas, lodging, meals, and supplies) for cleaning and performing touch-up painting (known as "turns" or "make readies") for Defendant Marathon at student apartments in Florida.

31. Defendant Stewart also told Plaintiff Strong and other workers that he or Defendant Wade would take care of everything with regard to the job arrangements. Stewart said, "Marathon will take care of you."

32. Defendants Stewart and Brightwell distributed t-shirts with Defendant Marathon's name and logo on them and told the workers that they were required to wear them while working in Florida.

33. Defendants Stewart and Brightwell told Plaintiff Strong and other workers that if anyone asked they should say that they work for Marathon.

34. Defendants promised Plaintiffs that they would be paid every Friday for the work they did through the previous Thursday.

35. Plaintiffs accepted the work on the terms offered by Defendants.

36. Plaintiffs performed the work as called for by their contracts with Defendants.

37. After meeting for approximately one hour, Plaintiff Strong and other workers followed Defendants Wade and Brightwell to the Copper Beach Townhomes in San Marcos, Hays County, Texas.

38. At the Copper Beach Townhomes, Defendants Brightwell and Wade assigned make readies to Plaintiff Strong and other workers and Plaintiff Strong worked from approximately 8:30 a.m. to 3:30 p.m.

39. Defendants Brightwell and Wade told Plaintiff Strong that he was done for the day.

40. Defendants Brightwell, Stewart, and Wade, told Plaintiff Strong that he and the rest of his crew, including the other Plaintiffs, should prepare to go to Florida.

41. Defendant Wade then told Plaintiff Strong and two other workers to go to Home Depot to purchase cleaning supplies and tools. Defendant Wade gave them $300.00 to pay for the items.

42. Approximately two days later, Defendant Wade or Defendant Stewart sent an email to Apollo Strong telling Plaintiffs and other workers to leave the next day for Gainesville, Florida.

43. On or about July 27, 2017, Plaintiffs and other workers began driving from Travis County to Florida in Plaintiff Strong's van.

44. On or about July 29, 2017, Plaintiffs met with Defendants Brightwell and Wade in Gainesville, Florida and they gave each Plaintiff a t-shirt with Defendant Marathon's name and logo on them and told the Plaintiffs that they were required to wear the shirts while working and that if anyone asked they should say they worked for Marathon.

45. On or about July 29, 2017, Defendants put Plaintiffs to work doing make readies at the Varsity House apartments at 1720 SW 37th St. in Gainesville, Florida.

46. Plaintiffs worked for Defendants for two and a half days in Gainesville. In the middle of their third day of work, Plaintiffs were told to stop work and to drive to Tallahassee, Florida to be ready to work there the following morning.

47. Plaintiffs worked doing make readies from approximately 8:00 a.m. to approximately 6:00 p.m. each of their first two days of work in Gainesville. On their third work day in Gainesville, Plaintiffs worked doing make readies from approximately 8:00 a.m. to 1:00 p.m.

48. On or about August 1, 2017, Plaintiffs drove from Gainesville to Tallahassee and began to do make readies at the Eclipse apartments.

49. Plaintiffs worked for Defendants for seven days in Tallahassee.

50. Plaintiffs worked doing make readies from approximately 8:00 a.m. to approximately 6:00 p.m. each day they worked in Tallahassee.

51. Throughout their employment in Florida, Plaintiffs began doing make readies at approximately 8:00 a.m., but they had to arrive at the apartments approximately 30 minutes earlier in order to receive their assignments, get keys to apartments, and prepare for the day.

52. Defendant Stewart told Plaintiffs what apartments to perform make ready work on, directed them to perform particular tasks in particular apartments, directed the order in which their work was performed, promised Marathon would pay Plaintiffs the wages they had earned, promised to get money to Plaintiffs so that they could eat, and fired Plaintiffs.

53. Defendant Brightwell told Plaintiffs what apartments to perform make ready work on, directed them to perform particular tasks in particular apartments, directed the order in which their work was performed, oversaw the work Plaintiffs did as they performed it, made some of Plaintiffs' hotel reservations, and promised to make other hotel reservations for Plaintiffs.

54. Defendant Wade told Plaintiffs what locations they would perform work at and promised Plaintiffs that they would be paid the wages they had earned.

55. Plaintiffs paid for their gas and meals and for some of their lodging and supplies so that they could perform the work for Defendants.

56. For some nights that Plaintiffs were working in Florida, Defendants Marathon and Brightwell reserved and paid for Plaintiffs' hotel rooms.

57. Defendants reimbursed Plaintiffs for $1,100.00 of their expenses.

58. Plaintiffs spent over $1,800.00 on gas, lodging, meals, and supplies that Defendants promised to reimburse, but did not.

59. Defendants paid Plaintiffs nothing for their work.

60. For example, in the workweek beginning July 28, 2017, the Plaintiffs each worked from approximately 8:00 a.m. to 6:00 p.m. on the 29th and 30th and on August 1st through 3rd and from approximately 8:00 a.m. to 1:00 p.m. on July 31st. For these approximately 55 hours of work, Plaintiffs were paid nothing.

61. Defendants' failure to pay Plaintiffs anything for their work and their failures to reimburse or pay for Plaintiffs' expenses as promised, resulted in Defendants' materially breaching their contracts with Plaintiffs.

62. Defendants' actions and omissions, as described above, were willful.

## FIRST CLAIM FOR RELIEF
### (FLSA)

63. Plaintiffs reincorporate and re-allege paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. Defendants violated Plaintiffs' rights under the Fair Labor Standards Act, 29 U.S.C. § 206 by failing to pay Plaintiffs at least the minimum wage rate for all hours they worked in each workweek.

65. Defendants violated Plaintiffs' rights under the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1) by failing to pay Plaintiffs one and one-half times their regular rate of pay for all hours worked in excess of forty in a workweek.

66. Defendants' violations of the FLSA, as specified above, were willful.

67. Plaintiffs are entitled to their unpaid minimum and overtime wages, an equal amount in liquidated damages, a reasonable attorney's fee, and their costs.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

68. Plaintiffs reincorporate and re-allege paragraphs 1 through 62 of this Complaint as if fully set forth herein.

69. Plaintiffs entered into contracts with Defendants as described fully above, namely to do make ready work for $200.00 per person per day in Texas and Florida with expenses paid and/or reimbursed.

70. Defendants breached the contracts by failing to comply with the promised terms and conditions as described above, namely failing to pay the wages promised and failing to pay for or reimburse all of Plaintiffs' expenses.

71. As a direct consequence of Defendants' breaches of the contracts, Plaintiffs suffered substantial injury.

72. Defendants are therefore liable to Plaintiffs for actual, incidental, and consequential damages.

73. Plaintiffs presented their claims to Defendants or their agents and the claims remain untendered more than 30 days after the presentation.

74. The non-LLC Defendants are therefore liable to Plaintiffs for their reasonable attorney's fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001, et seq.

## THIRD CLAIM FOR RELIEF
### (Quantum Meruit)

75. Plaintiffs reincorporate and re-allege paragraphs 1 through 62 of this Complaint as if fully set forth herein.

76. Plaintiffs provided valuable services and materials for Defendants.

77. Defendants accepted these services and materials.

78. Defendants had reasonable notice that Plaintiffs expected compensation for these service and materials.

79. Defendants failed to adequately compensate Plaintiffs for these materials and services.

80. Defendants are therefore liable to Plaintiffs for their actual damages and pre- and post-judgment interest.

81. Plaintiffs presented their claims to Defendants or their agents and the claims remain untendered more than 30 days after the presentation.

82. The non-LLC Defendants are therefore liable to Plaintiffs for their reasonable attorney's fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001, et seq.

## FOURTH CLAIM FOR RELIEF
### (Promissory Estoppel)

83. Plaintiffs reincorporate and re-allege paragraphs 1 through 62 of this Complaint as if fully set forth herein.

84. Defendants promised Plaintiffs that they would pay Plaintiffs for their work and reimburse and/or pay their expenses, as described above.

85. Plaintiffs reasonable and substantially relied on those promises to their detriment.

86. Plaintiffs' reliance was foreseeable by Defendants.

87. Injustice can be avoided only by enforcing the Defendants' promises.

88. Defendants are therefore liable to Plaintiffs for their actual damages and pre- and post-judgment interest.

89. Plaintiffs presented their claims to Defendants or their agents and the claims remain untendered more than 30 days after the presentation.

90. The non-LLC Defendants are therefore liable to Plaintiffs for their reasonable attorney's fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001, et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A. declare that Defendants have violated the FLSA by failing to pay Plaintiffs the minimum and overtime wages as required by 29 U.S.C. §§ 206 - 207;

B. award Plaintiffs their unpaid minimum and overtime wages and an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b);

C. award Plaintiffs their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b) and Tex. Civ. Prac. & Rem. Code § 38.001, et seq.

D. award Plaintiffs their actual, incidental, and consequential damages for Defendants' breaches of contract;

E. award Plaintiffs their actual damages for their quantum meruit claims;

F. award Plaintiffs their actual damages for their promissory estoppel claims;

E. Award Plaintiffs pre- and post-judgment interest, as provided by law; and

F. Award Plaintiffs such other and further relief as is just and proper.

    Respectfully submitted,

    **TEXAS RIOGRANDE LEGAL AID**

    /s/Nathaniel C. Norton
    Nathaniel C. Norton
    Texas Bar No. 24037196
    1111 N. Main Ave.
    San Antonio, TX 78212
    Tel.: (210) 212-3700
    Fax: (210) 229-9328
    nnorton@trla.org

                    Lakshmi Ramakrishnan
Texas Bar No. 24037324
301 S. Texas Ave.
Mercedes, Texas 78570
Tel (956) 447-4850
Fax (956) 825-7035
lramakrishnan@trla.org

ATTORNEYS FOR PLAINTIFFS